NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

PHILIP STEVEN MATWYUK, *Appellant.*

No. 1 CA-CR 14-0202

FILED 5-26-2015

Appeal from the Superior Court in Mohave County
No. S8015CR201200754
The Honorable Steven F. Conn, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Jeffrey A. James, Attorney at law, Flagstaff
By Jeffrey A. James
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Jon W. Thompson delivered the decision of the Court, in which Presiding Judge Andrew W. Gould and Judge Maurice Portley joined.

---

**T H O M P S O N**, Judge:

¶1        This case comes to us as an appeal under *Anders v. California,* 386 U.S. 738 (1967), and *State v. Leon,* 104 Ariz. 297, 451 P.2d 878 (1969). Counsel for Philip Steven Matwyuk (defendant) has advised us that, after searching the entire record, he has been unable to discover any arguable questions of law and has filed a brief requesting this court conduct an *Anders* review of the record.  Defendant has been afforded an opportunity to file a supplement brief *in propria persona,* but has not done so.

### FACTS AND PROCEDURAL HISTORY

¶2        Defendant was indicted on two counts of attempted first degree murder, one count of attempted first degree murder by domestic violence, one count of burglary in the first degree, six counts of aggravated assault, and two counts of aggravated assault by domestic violence. Defendant pled not guilty to all charges and the matter proceeded to a jury trial.

¶3        At trial, the state presented evidence of the following facts. A.D. and defendant began a relationship in 2010 and lived at A.D.'s home with her two children from a previous relationship.  In May 2012, A.D. and defendant ended their relationship, and defendant moved out of A.D.'s house.  After defendant moved out, A.D. had the locks on the house changed and unplugged the garage door opener.

¶4        On the morning of June 2, 2012, A.D.'s next door neighbor saw defendant walking back and forth around A.D.'s house.  The neighbor watched as defendant attempted to open the garage door, tapped on the windows to try to remove the screens, and eventually walked around the side of the house toward the backyard.  Because the neighbor was aware defendant no longer lived at the home, she picked up the phone to call the police.  Prior to placing the call, however, the neighbor heard screams coming from A.D.'s house and she immediately dialed 911.

¶5          A.D.; her two-year old daughter; her friend (M.H.); her sister (K.G.); K.G.'s two-year old son; and the children's fifteen-year old babysitter (M.J.H.) were asleep in the house.  A.D. awoke to a tapping noise, and minutes later, saw defendant enter her bedroom, where M.H. was also sleeping, with a knife in his hands and a bandana wrapped around his face.  A.D. began screaming and ran from the room.  As she fled, she noticed she had been stabbed and was "covered in blood."

¶6          M.H. awoke to discover he had been stabbed, was bleeding profusely, and was having difficulty breathing.  M.H. has a prosthetic leg, which caused him to have limited mobility at times.  Defendant was standing near him, pointing a knife at him, and yelling that he would kill M.H. if he did not leave A.D.  M.H. stood up, but soon lost consciousness.  When M.H. regained consciousness he was lying on the floor of the hallway.  M.H. yelled for help and unsuccessfully tried to move from the hallway until he eventually again lost consciousness.

¶7          K.G. heard her sister yelling, "He's in here" and ran out of her bedroom.  When she saw defendant exiting the master bedroom, she tried to run back into her room.  Defendant knocked her down and while on top of her attempted to stab her, stating "[y]ou're going to die . . . ."  K.G.'s son was standing approximately a foot away and witnessed the altercation.  K.G. broke free from defendant's grasp, and ran to the master bedroom to assist M.H.  When defendant approached K.G. again, she managed to knock the knife out of his hands and eventually ran out the front door to get help.

¶8          M.J.H. awoke from sleeping on the couch with A.D.'s daughter, and saw A.D. bleeding and defendant trying to stab K.G.  M.J.H. grabbed a phone to call 911.  When defendant approached M.J.H. with the knife, she threw the phone at his head.   Defendant picked up the phone, said "Oh, shit," and ran out the back door of the house.  M.J.H. grabbed the young children and ran out of the front of the house to get help.

¶9          M.H. was hospitalized for ten days and remained unconscious for two days.  He received nine stab wounds to his chest, neck and wrist.  K.G. had wounds to both hands, her arm, her back, and her breast.  The cuts to her hands and arm required stitches.  A.D. had stab wounds to her left arm, under her right arm, her right hand and the back of her head.  A.D. also received stitches for her injuries.

¶10          During the ensuing police search, defendant called the police from a pay phone at a truck stop.  Defendant reported his location, and police took him into custody.  Defendant had blood on his jeans and shoes.

At the police department, the police advised defendant of his Miranda rights, and defendant agreed to participate in an interview with a detective.

¶11         After initially denying that he was at A.D.'s house that morning, the police confronted defendant with the next-door neighbor's eyewitness account placing him at the residence. Defendant then admitted that he went to the house to pick up personal items he had left there. Defendant stated that "he was let in the house" and went to A.D.'s bedroom to try to reconcile with her. When defendant saw M.H. in bed, he became extremely angry and grabbed a knife from the kitchen to scare M.H. and get him to leave the house. Defendant claimed that after A.D. began screaming, M.H. attacked him, and he had to fight M.H., A.D. and K.G. in order to get away. After defendant left the house, he called his father and told him that he thought he stabbed his girlfriend and asked that his father hide him.

¶12         A jury convicted defendant of burglary in the first degree, (count 4); attempted second degree murder as to M.H. (count 2); aggravated assault as to M.H., (count 5) (causing serious physical injury); aggravated assault as to M.H., (count 6) (by deadly weapon or dangerous instrument); aggravated assault as to M.H. (count 12) (causing temporary but substantial disfigurement or substantial loss of impairment of body organ); aggravated assault  by domestic violence as to A.D. (count 7) (by deadly weapon or dangerous instrument); aggravated assault as to K.G. (count 8) (by deadly weapon or dangerous instrument); disorderly conduct with a weapon as to M.J.H. (count 9); misdemeanor assault as to A.D (count 10); and misdemeanor assault as to K.G. (count 11). The jury also found three aggravating factors: causing physical, emotional or financial harm to the victim (counts 2, 4, 5, 6, 7, 8, 9, 12); the use or threatened use of a dangerous instrument during the commission of offense (counts 2, 4, 5, 6, 7, 8, 12); and the infliction or threatened infliction of serious physical injury (counts 2, 4, 5, 6, and 12). The court found defendant's lack of prior felony convictions to be a mitigating factor.

¶13         The trial court sentenced defendant to a mitigated term of seven years in prison on count 4, an aggravated term of twelve years in prison on count 2, a presumptive term of seven and one-half years in prison on count 5, a presumptive term of seven and one-half years in prison on count 6, and a presumptive term of six years in prison on count 12. The court ordered counts 2, 5, 6, and 12 to run consecutively to count 4, and to be served concurrently. The trial court also sentenced defendant to an aggravated term of eight years in prison on count 7, to be served consecutively to count 2; a mitigated term of seven years in prison on count

8, to be served consecutively to count 7; and a mitigated term of two years in prison on count 9, to be served consecutively to count 8. On counts 10 and 11, the trial court sentenced defendant to six months in jail, with credit for time served. The cout gave defendant 643 days of presentence incarceration credit on count 4.

## DISCUSSION

**¶14** After reviewing the entire record for reversible error, we find none. *See Leon*, 104 Ariz. at 300, 451 P.2d at 881. All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure, and the sentences imposed were within the statutory limits. Defendant was present at all critical stages of the proceedings and was represented by counsel. Furthermore, based on our review of the record before us, substantial evidence supports the jury's verdicts.

**¶15** Pursuant to *State v. Shattuck*, 140 Ariz. 582, 584-85, 684 P.2d 154, 156-57 (1984), defendant's counsel's obligations in this appeal are at an end. Defendant has thirty days from the date of this decision to proceed, if he desires, with a *pro per* motion for reconsideration or petition for review.

## CONCLUSION

**¶16** We affirm the convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: ama